IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

IN THE MATTER OF THE SEARCH OF
Apple iPhone (ATF Ex. #0004),
CURRENTLY STORED IN THE ATF-
ROANOKE EVIDENCE VAULT

Case No. ___7:22mj14_____

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Adam Moody, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules

of Criminal Procedure for a search warrant authorizing the examination of property— one mobile

phone described in Attachment A (the "Device") and the extraction from that property of the

electronically stored information described in Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF) and have been since October 2019.  I am a graduate of the Federal Law

Enforcement Training Center (FLETC) and the ATF Special Agent Basic Training Academy. I

received specialized training concerning violations of the Gun Control Act within Title 18 and

the National Firearms Act within Title 26, of the United States Code pursuant to firearms

violations. I am a duly sworn agent who is authorized to carry firearms, execute warrants, and

make arrests for offenses against the Unites States and to perform such other duties as authorized

by law. As an ATF Special Agent, I am familiar with Federal criminal laws including narcotics

offenses under Title 21 of the United States Code, and firearms offenses under Titles 18 and 26

of the United States Code.

3.      Prior to joining the ATF, I was a police officer with the Chesterfield County Police Department, in Virginia, for approximately fourteen (14) years, which included ten (10) years as a member of the department's Special Weapons and Tactics team.

4.      I have participated in the execution of numerous arrest and search warrants for criminal offenses involving the possession with the intent to distribute controlled substances and illegal possession of firearms. I am familiar with the methods drug traffickers use to conduct their illegal activities, to include communication methods, vehicles, text messaging, and narcotics transactions. I am a graduate of Hilbert College, as of 2005, with a Bachelor's of Science Degree in Criminal Justice.

5.      The facts in this affidavit come from my education, training and experience as well as information obtained from other law enforcement officers.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.      The property to be searched constitutes: One (1) electronic device seized from Richard COTTON on February 8, 2022, further identified as a blue Apple iPhone (ATF Ex. #0004). The device is currently stored in the evidence vault at the ATF-Roanoke Field Office, located at 310 First Street SW, Roanoke, VA.

7.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data more particularly described in Attachment B.

**<u>PROBABLE CAUSE</u>**

8.      Starting in August 2021, the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF) has been engaged in a criminal investigation of Richard Leon COTTON III
regarding possible violations of Title 21, United States Code, Sections 846 and 841(a)(1)
involving the distribution of controlled substances, including heroin and fentanyl.

9.      Between August and September 2021, investigators made several controlled
purchases of suspected heroin from COTTON within the Western District of Virginia, using a
confidential informant.  Standard controls were in place for each transaction, to include the use
of audio and video recording devices, pre-recorded currency, searches of the informant before
and after each transaction, and active police surveillance techniques.  Video of specific
transactions depicts COTTON as the seller of the drugs, and investigators have observed
COTTON engaged in narcotics transactions in connection with these buys.

10.      For example, in August 2021, investigators utilized a confidential informant to
make a controlled purchase of heroin from COTTON.  During a recorded set-up call, and
through a continued series of interactions by phone call and text message, COTTON directed the
informant to a particular location in Roanoke for the narcotics transaction.  Once there, the
informant met with COTTON under police surveillance to purchase a quantity of suspected
heroin.  In a recorded debrief that followed, the informant identified COTTON as the seller of
the drugs and as the person with whom he/she had communicated by phone for the purchase.
Subsequent laboratory analysis has confirmed that the substance purchased from COTTON on
this date contained a measurable quantity of a mixture and substance containing fentanyl and
heroin.

3

11.     Investigators made another controlled purchase from COTTON in September 2021 using a confidential informant.  During a series of interactions conducted via phone, COTTON instructed the informant to meet at a location in Roanoke for the transaction.  Once there, COTTON entered the passenger side of the informant's vehicle to sell a quantity of suspected heroin.  The informant identified COTTON as the seller of the drugs in a recorded debrief, and as the person with whom he/she had communicated by phone for the purchase.  The substance purchased from COTTON on this date was confirmed by laboratory analysis to contain a measurable quantity of heroin and fentanyl. [1]

12.     Again, in September 2021, investigators utilized a confidential informant to make a controlled purchase of heroin from COTTON.  The informant contacted COTTON by recorded phone call under police observation to order a quantity of heroin.  COTTON directed the informant to meet at a location in Roanoke. COTTON indicated during the call that the location would be different than a past transaction location, and he would send a text to the informant with the specific location. The informant received the additional instructions for the meeting location from COTTON. Under police surveillance the informant responded to the deal location and a transaction was conducted. The substance purchased from COTTON on this date was confirmed by laboratory analysis to contain a measurable quantity of fentanyl.

13.     During the recorded debrief that followed, the informant identified COTTON as the person with whom he/she had communicated by phone call and text message for the purchase.

---

[1]  The informant for this purchase is a self-admitted former user and distributor with prior felony convictions.

4

14.     These controlled purchases culminated in the federal indictment of COTTON on

3 counts of 21 USC 841(a)(1) on February 3, 2022.   On February 8, 2022, COTTON was

arrested at his residence located at 215 Cherry Ave NW, Apt. 6, Roanoke.  He had a phone (the

"Device") in his possession at the time of arrest: a blue Apple iPhone (ATF Ex. #0004). The

phone was seized at that time and secured in ATF evidence vault.

15.     On February 8, 2022, subsequent to his arrest, COTTON was informed of his

Miranda Rights and agreed to speak with investigators. During the recorded interview with law

enforcement COTTON made statements that he utilized his cell phone to arrange and organize

illegal drug transactions in Roanoke. COTTON advised that he had been using and actively

distributing heroin from April 2021 until the present. COTTON described how he would

communicate with his drug supplier by phone and would then meet with him and receive the

product known to him (COTTON) as heroin. COTTON advised the quantity would differ based

on what the dealer had available. COTTON said he could receive between 5 - 10 ounces of

heroin, one to two times a week from his supplier. COTTON voluntarily showed investigators a

message on his phone, dated, Wed, Jan 19, 1:19PM, that read *"Bro I put 10 to the side 4 u…*

*holla @ur guy tht needed u when u wsnt arnd last week… tell him u rdy 4 him!!"*

16.     Based on my training and experience, I know that narcotics traffickers often carry

and use multiple electronic devices, including cellular phones, tablets, and laptop computers, to

facilitate communications with customers and sources of supply, to manage drug proceeds, and to

avoid detection of their drug trafficking activities by law enforcement.  Based on the foregoing,

there is probable cause to believe that COTTON carries and uses electronic devices to facilitate

his drug trafficking activities.  I respectfully request that a search warrant be issued for the Device,

5

for examination and seizure of stored content related to drug trafficking and/or distribution, including:

> a.   Text messages (incoming and outgoing);
>
> b.   Emails (incoming and outgoing);
>
> c.   Recent calls (incoming and outgoing);
>
> d.   Missed calls;
>
> e.   Contact lists;
>
> f.   Digital codes;
>
> g.   GPS and other location information;
>
> h.   Appointment calendars;
>
> i.   Photographs, videos and other electronic images and media.

1.      The Device is currently in the lawful possession of ATF, having been seized from COTTON incident to arrest.  I know from training and experience that the Device has been stored in a manner in which the content, to the extent material to this investigation, is in substantially the same state as it was when the Device first came into law enforcement possession.  In my training and experience, I know that the Device is likely to constitute and contain evidence of the crimes under investigation.

## **TECHNICAL TERMS**

17.      Based on my training and experience and conversations with ATF Special Agent Nicholas Davis, I use the following technical terms to convey the following meanings:

> a.   Wireless telephone:   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or

traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved

7

in such navigation.  The Global Positioning System (generally abbreviated "GPS")
consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an
extremely accurate clock.   Each satellite repeatedly transmits by radio a
mathematical representation of the current time, combined with a special sequence
of numbers.  These signals are sent by radio, using specifications that are publicly
available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna
receives signals from at least four satellites, a computer connected to that antenna
can mathematically calculate the antenna's latitude, longitude, and sometimes
altitude with a high level of precision.

d.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for
storing data (such as names, addresses, appointments or notes) and utilizing
computer programs.  Some PDAs also function as wireless communication devices
and are used to access the Internet and send and receive e-mail.  PDAs usually
include a memory card or other removable storage media for storing data and a
keyboard and/or touch screen for entering data.  Removable storage media include
various types of flash memory cards or miniature hard drives.  This removable
storage media can store any digital data.  Most PDAs run computer software, giving
them many of the same capabilities as personal computers.  For example, PDA
users can work with word-processing documents, spreadsheets, and presentations.
PDAs may also include global positioning system ("GPS") technology for
determining the location of the device.

8

e.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

f.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18.  Based on my training and experience, I know that individuals who desire to commit drug crimes communicate through the use of cellular telephones and other electronic devices, including as follows:

a.  Individuals involved in illegal narcotics distribution commonly maintain cellular telephones, electronic mobile devices, pagers and other communication devices to further their narcotics trafficking activities. They also use these devices to relay a variety of illicit information, including, but not limited to, telephone numbers of co-conspirators, digital codes to identify the caller, digital codes to indicate the

location of a meeting place, the amount of a controlled substance or its purchase price, or other information designed to facilitate criminal activity;

b.  Individuals involved in illegal narcotics distribution commonly maintain in electronic storage media names, telephone numbers, recorded messages, photographs, and other items of information concerning themselves and individuals associated with their criminal activities, including but not limited to cellular telephones, electronic mobile devices, digital cameras and recorders, memory storage cards, home computers, and computer storage disks;

c.  Individuals involved in illegal narcotics distribution commonly take, or cause to be taken, photographs and videos of themselves, their associates, their property, their drugs, and/or their firearms.  These photographs and videos are commonly stored in electronic storage media, including but not limited to cellular camera telephones, electronic mobile devices, digital cameras, memory cards, home computers, and computer storage disks;

d.  Individuals involved in illegal narcotics distribution commonly maintain records in various forms of electronic or magnetic media, and in computers.  Based upon my knowledge of electronic devices and also on information derived from ATF forensic computer specialists, property search retrieval, analysis, documentation and authentication of all such electronically stored computer data requires laboratory analysis by a qualified computer specialist.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19.     Based on my knowledge, training, and experience, I know that electronic devices such as the Device can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

20.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.

11

Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21.     *Nature of examination.*     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22.     *Manner of execution.*     Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

23.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device, as more fully described in Attachment A, to seek the items and evidence described in Attachment B.

Respectfully submitted,

ADAM MOODY        Digitally signed by ADAM
                  MOODY
                  Date: 2022.02.15 10:57:04 -05'00'

Adam Moody
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn before me (by telephone on February 16, 2022)
on February 15, 2022:

*Robert S. Ballou*

_____
ROBERT S. BALLOU
UNITED STATES MAGISTRATE JUDGE

13